[Cite as *State v. Bryant*, 2011-Ohio-4555.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 09CA009736 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEANDRA E. BRYANT | LORAIN MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. CRB0900837 |

DECISION AND JOURNAL ENTRY

Dated: September 12, 2011

BELFANCE, Presiding Judge.

{¶1} Appellant, Deandra Bryant, appeals from the judgment of the Lorain Municipal Court. This Court reverses.

I.

{¶2} In March 2009, there was a small fire in the girls' restroom at Southview High School in Lorain, Ohio. Four girls, including Ms. Bryant, were identified as suspects. Ms. Bryant and her friends were kept apart from the other students as the building was cleared. After police and fire departments secured the building, students and staff were allowed to reenter and the four girls were taken to the principal's office.

{¶3} School staff and police officers questioned Ms. Bryant and three other girls about the cause of the fire. Ms. Bryant originally said that she did not know who had started the fire. A few hours later, she told officers that she knew one of the other girls, Alexis, had a lighter and had started the fire.

{¶4} After a bench trial, Ms. Bryant was convicted of misconduct at an emergency in violation of R.C. 2917.13, a first degree misdemeanor. She appeals her conviction, presenting two assignments of error.

II.

ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED WHEN OVERRULING THE APPELLANT'S MOTION FOR [CRIM.R.] 29 A[C]QUITTAL AS THE STATE HAD FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR MISCONDUCT AT EMERGENCY."

{¶5} In her first assignment of error, Ms. Bryant argues that her conviction is not supported by sufficient evidence. We agree.

{¶6} When considering a challenge to the sufficiency of the evidence, an appellate court determines whether the prosecution has met its burden of production. This Court views the evidence in a light most favorable to the prosecution to "determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether * * * any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶7} Ms. Bryant was convicted of misconduct at an emergency, in violation of R.C. 2917.13(A)(1). The section provides that no person shall knowingly "[h]amper the lawful operations of any law enforcement officer * * * engaged in the person's duties at the scene of a fire * * *[.]" The offense was elevated to a first degree misdemeanor because the complaint alleged, and the trial court found, that her conduct created a risk of physical harm to persons or property. R.C. 2917.13(C).

{¶8}   The State presented the testimony of several witnesses.   Because we are reviewing Ms. Bryant's challenge to the sufficiency of the State's evidence, we must consider that evidence in the light most favorable to the State.   That evidence demonstrated that Ms. Bryant, and three friends, entered the girls' restroom, someone started a fire in a trash can in the bathroom, and the girls returned to their classroom before the fire was discovered.

{¶9}   As the evacuation began, their teacher told an officer on duty at the school that the girls were in the bathroom shortly before the fire was discovered.  The four girls were separated from the rest of the students during the evacuation.  There was no evidence that Ms. Bryant or the girls misbehaved during the evacuation so as to hamper the lawful operations of any responders at the scene.  When the fire department cleared the school for staff and students to reenter, the four girls were taken to the principal's office to be questioned.

{¶10}  All of the girls denied starting the fire.  They were searched and no lighter was discovered.  One of the girls was allowed to leave to go to work.  Later, another girl, Alexis, asked to use the restroom.  When she returned, she was found with a lighter hidden in her bra. The fourth girl in the group said that Alexis had hidden the lighter in her vagina and removed it when she went to the bathroom.  When Ms. Bryant was asked about the lighter, she answered she learned Alexis had the lighter and started the fire, a fact she discovered after she initially spoke with the police.  Several days later, Ms. Bryant was charged with misconduct at an emergency.

## Misconduct at an Emergency

{¶11}  Ms. Bryant was convicted for the offense of misconduct at an emergency, in violation of R.C. 2917.13(A)(1).  The offense of misconduct at an emergency covers a broad range of conduct:

"(A) No person shall knowingly do any of the following:

"(1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person, engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind;

"(2) Hamper the lawful activities of any emergency facility person who is engaged in the person's duties in an emergency facility;

"(3) Fail to obey the lawful order of any law enforcement officer engaged in the law enforcement officer's duties at the scene of or in connection with a fire, accident, disaster, riot, or emergency of any kind."

{¶12} There are only a handful of decisions that have discussed this offense. The common thread they share is that the defendant acted-out in a way that interfered with an official's investigation of an accident or emergency. As explained below, this is in stark contrast to Ms. Bryant's conduct in this case. The alleged act of providing false information to the investigating officer subsequent to the emergency at hand undoubtedly caused a delay in the investigation, but it was not of the same quality as the conduct that has resulted in convictions under this statute and did not occur during an ongoing emergency.

{¶13} *State v. Zaleski*, 10th Dist. No. 10AP-101, 2010-Ohio-5557, involved the response to and investigation of a fire alarm. Firefighters were dispatched to an apartment complex where a fire alarm was ringing. Id. at ¶3. After discovering that smoke from burned food set off the alarm, and the smoke was cleared, the alarm bell continued to ring. Id. The firefighters were concerned that there might be another problem and they began searching for the electrical panel that would allow them to reset the alarm. Id.

{¶14} During their search, Mr. Zaleski asked the firemen what they were doing. Id. They explained what they were searching for and asked him to leave, which he did. Id. The firefighters encountered Mr. Zaleski again, this time as he attempted to disconnect electric meters to shut off the electricity. Id. He was ordered to stop and he left. Id.

{¶15} Fifteen minutes later, as firefighters continued searching for the panel, the lights went off in the apartment complex. Id. at ¶4. To the firefighters outside the building, it was unclear whether something had happened to the firefighters inside the apartment complex until Mr. Zaleski appeared and said he had turned off the power. Id. The firefighters were forced to contact the electric company to request an employee to come to the apartment complex to restore power that Mr. Zaleski had shut off by tampering with the electric meters. Id.

{¶16} On appeal, Mr. Zaleski argued that he was not guilty of misconduct at an emergency because the State failed to prove the existence of an emergency. Recognizing that the statute does not define "emergency," the Tenth District applied the dictionary definition of "an unexpected situation or sudden occurrence of a serious and urgent nature that demands immediate attention." (Internal quotations and citations omitted) Id. at ¶12. The court held that an emergency existed because the continued ringing of the fire alarm created a question about whether the alarm was working properly and panicked the residents of the apartment complex. Id. at ¶13. The court concluded that the malfunctioning alarm created a serious and urgent problem demanding the firefighters' immediate attention and, therefore, there was an emergency. Id. at ¶14. Mr. Zaleski's conduct interfered with the firefighters' ability to respond to the emergency, and his conviction was affirmed.

{¶17} The Tenth District discussed misconduct at an emergency in another case, *State v. Blocker*, 10th Dist. No. 06AP-313, 2007-Ohio-144. Paramedics responded to an emergency call and found a woman in an apartment in abdominal pain. Id. at ¶5. During their examination of the woman, her sister, Ms. Blocker, began to scream at the paramedics. Id. at ¶8. The paramedics had to interrupt their treatment of their patient several times to deal with Ms. Blocker's belligerent conduct. Id.

{¶18} The Tenth District concluded that Ms. Blocker's conduct occurred during an emergency – the patient's health concern was serious enough that it demanded immediate attention and hospitalization. Id. at ¶53. The court also held that the evidence supported a finding that Ms. Blocker interrupted their assistance of their patient. Id. at ¶54. Accordingly, the court concluded that Ms. Blocker's conviction for misconduct at an emergency was supported by sufficient evidence. Id. at ¶56.

{¶19} This Court has also considered application of the misconduct at an emergency statute in the context of an accident. In *State v. Wagar* (1993), 91 Ohio App.3d 233, this Court affirmed Mr. Wagar's conviction for misconduct at an emergency. Mr. Wagar had attempted to land his lightweight fabric airplane when a gust of wind caused it to crash upside down on the runway. Id. at 234. Several law enforcement officers responded to the scene. Id. Mr. Wagar was very upset and wanted to move his airplane. Id. at 235. An officer instructed him several times not to move it. Id.

{¶20} Notwithstanding the officer's directions, Mr. Wagar tied a rope to the plane and tried to move it. Id. He and the officer continued to talk back and forth and, eventually, Mr. Wagar was arrested for misconduct at an emergency. Id. This Court concluded that the evidence was sufficient to support Mr. Wagar's conviction because his actions hampered the law enforcement officer in the performance of her duties at the scene of an accident. Id.

{¶21} In each of these cases, the defendant engaged in some meddlesome or obstreperous conduct as firefighters, paramedics, or law enforcement officers were engaged in their duties at the scene of an accident or emergency. This is precisely the type of conduct that this section was intended to prohibit.

**Legislative Service Commission Note**

{¶22} The Legislative Service Commission's Note about this offense explained that this section is "aimed primarily at controlling bystanders and curiosity seekers at emergency scenes, in order to permit police, fire brigades, rescue and medical personnel, and others, to perform their duties with the utmost efficiency at such times." The offense is described as "a specific tool for crowd control at emergencies" but the offense "need not necessarily arise from the collective conduct of a crowd but may be committed by one person." The Note sets forth an example of "one who simply gets underfoot at an emergency and is consciously aware he is doing so * * *." R.C. 2917.13, Legislative Service Commission Note (1973). This example fits the conduct described in *Zaleski*, *Blocker*, and *Wagar*. It does not, however, describe Ms. Bryant's conduct.

{¶23} The evidence presented at the trial, considered in a light most favorable to the State, established that Ms. Bryant was with a group of girls, one of whom started a fire in the bathroom. When the building was evacuated, Ms. Bryant complied with the order to evacuate. During the time the fire department extinguished the fire, Ms. Bryant waited outside the building; there was no evidence that she caused any disturbance or was disruptive. Nothing she did during the evacuation could be considered to have hampered the lawful operations of a law enforcement officer or firefighter.

{¶24} When the fire was extinguished and students and staff were permitted to reenter the building, Ms. Bryant complied by going to the principal's office to be questioned. She answered questions and signed a written statement. Several hours later she also disclosed that she had discovered that Alexis had the lighter. The fact that, after the emergency, she may have lied in her answers to questions and in her written statement might give rise to an obstructing justice charge, but it does not satisfy the elements of misconduct at an emergency. "The making

of unsworn false oral statements to a law enforcement officer with the purpose to hinder the officer's investigation of a crime is punishable conduct with the meaning of [the obstructing justice statute]." (citations omitted) *State v. Bailey* (1994), 71 Ohio St.3d 443, syllabus. Ms. Bryant's allegedly false answers given well after the emergency had abated, however, did not knowingly hamper the operations of a law enforcement officer engaged in his duties at the scene of a fire. Thus, the State failed to prove each element of the offense beyond a reasonable doubt.

**Conclusion**

{¶25} The State did not prove that Ms. Bryant committed every element of the offense of misconduct at an emergency beyond a reasonable doubt. The evidence, when viewed in a light most favorable to the State, could allow a reasonable conclusion that Ms. Bryant lied to the officer, but that is not sufficient to prove that she knowingly hampered the officer's operations at the scene of a fire. This decision should not be read to condone Ms. Bryant's behavior – we do not. But we also cannot affirm her conviction when her conduct fell outside that prohibited by the offense of misconduct at an emergency.

{¶26} Ms. Bryant's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

"THE VERDICT FINDING THE APPELLANT, MS. DEANDRA BRYANT GUILTY OF ONE COUNT OF MISCONDUCT AT EMERGENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶27} In view of this Court's ruling on Ms. Bryant's first assignment of error, her second assignment of error is moot. Accordingly, we will not address it.

III.

{¶28} In light of the foregoing, we sustain Ms. Bryant's first assignment of error, decline to address her second assignment of error as moot, and reverse the judgment of the Lorain Municipal Court.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

JENNIFER YOUNG, Attorney at Law, for Appellant.

JEFF SZABO, Assistant City Prosecutor, for Appellee.