[Cite as *State v. Mast*, 2017-Ohio-8388.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17CA11 |
| ROY H. MAST | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Holmes County Court, Case No. 16CRB-294AB

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 27, 2017

APPEARANCES:

For Plaintiff-Appellee

SEAN WARNER
Holmes County Prosecutor
164 East Jackson Street
Millersburg, OH 44654

For Defendant-Appellant

DAVID HUNTER
244 West Main Street
Loudonville, OH 44842

*Gwin, J.,*

{**¶1**}    Appellant Roy H. Mast ["Mast"] appeals his conviction and sentence on one count of Misconduct at an Emergency after a bench trial in the Holmes County Court.

*Facts and Procedural History*

{**¶2**}    Members of the Richland Township Fire Department responded to a fire at the Yoder farm on August 19, 2016.  The fire belched out "heavy black smoke" and could be seen from a mile and a quarter away.  The first to arrive at the fire was Fire Chief Melissa McCartney-Wells.  Chief Wells began to assess and document the fire as she waited for the arrival of firefighting equipment.  Chief Wells observed burning in the fire, tires, plastic and other trash.  The heavy black smoke is indicative of such petroleum products including plastic and rubber burning.

{**¶3**}    The fire was burning in the farmyard near a barn and a formal manure pit structure.  The area is bordered by a cement drive or "alleyway." Assistant Chief Jeff Wells arrived driving the department's grass truck with firefighter Ballantyne.  He parked the truck on the cement alleyway.  The grass truck's equipment includes a two hundred gallon tank of water, heavy fire hoses and a pump to force the water.  Firefighter Ballantyne was assigned to "pump operator."  Ballantyne's job as the truck or pump operator is important as she needs to make sure the pump stays running, and water pressure is maintained or changed if needed to fight the fire.  In case something goes wrong..." she is "...kind of a safety officer."  The chief and assistant chief were operating the hose.

{**¶4**}    The firefighters were on scene for fifteen to twenty minutes actively engaged in fire suppression.  At that time, Mast drove a skid loader passed one fire truck and up

the cement alleyway.   The skid loader approached the back of the grass truck.  Firefighter Ballantyne stepped away from her post at the back of the truck, raised her right hand, and yelled at Mast to stop.  Firefighter Ballantyne was also making a stop gesture with her right hand.  Mast did not stop.  Firefighter Ballantyne yelled and gestures again.  At this point, she had to take her attention away from her firefighters and the pumps to concentrate on Mast and the skid loader.  Mast leaned out of the skid loader and yelled at the firefighter "move that piece of shit or he would move it for you."  Ballantyne again told Mast to stop and leave the area.   Mast began to inch the skid loader forward repeatedly stopping and going.  Firefighter Ballantyne left her post, "because I thought he was going to run over me."  (T. 54).  Ballantyne continued to yell.  Finally, Mast backed up the skid loader, lowered his bucket again and began approaching the fire truck.  Ballantyne yelled at Mast, "Don't threaten me with that.  I will call the law and have your ass arrested."  (T. 56).   Mast repeated his moves with the skid loader which caused firefighter Ballantyne to feel threatened.  The encounter lasted "5 to 10 minutes."  (T. 63).

{¶5}   Concerned for her firefighters' safety, Chief Wells yelled to firefighter Ballantyne to get away from the truck.  The Chief then left her post on the fire hose to aide Ballantyne.  As Chief Wells walked through the muck she saw "[Mast] put the (unintelligible) down and starts inching towards the fire truck and towards firefighter Ballantyne and it was a stop, go, stop, go, stop, go and he starts lifting the bucket again."  (T. 82).

{¶6}   Mast is a worker on the Yoder farm.  Mast admitted telling the firefighters to move "that piece of shit"; however, he denied he threatened the firefighters.   Mast

believed that the firefighters were upset because they had been to the Yoder farm several times to extinguish illegal burns. Mast claimed the encounter lasted no more than thirty seconds. (T. at 125). Mast admitted that he hid and did not respond when the police came to his trailer to question him about the incident.

{¶7} Mast was charged with Misconduct at an Emergency in violation of R.C. 2917.13 and Disorderly Conduct in violation of R.C. 2917.11. The matter proceeded to a bench trial. Mast was found guilty by the court of both counts. The court found that the chargers merged as they were the result of the same conduct and Mast was sentenced on the Misconduct at an Emergency charge to 30 days in jail and a $250.00 fine.

*Assignment of Error*

{¶8} Mast raises one assignment of error,

{¶9} "I. APPELLANT'S CONVICTION FOR MISCONDUCT AT AN EMERGENCY IN VIOLATION OF OHIO REVISED CODE SECTION 2917.13(A), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Law and Analysis.*

**Standard of Review**.

{¶10} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001);

*State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶11} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.

1983).  Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  Id.

**Issue for appeal.**

{¶12} Whether the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Sufficiency of the Evidence.*

Mast was convicted of Misconduct at an Emergence.  R.C. 2917.13 provides,

(A) No person shall knowingly do any of the following:

(1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person, engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind;

(2) Hamper the lawful activities of any emergency facility person who is engaged in the person's duties in an emergency facility;

(3) Fail to obey the lawful order of any law enforcement officer engaged in the law enforcement officer's duties at the scene of or in connection with a fire, accident, disaster, riot, or emergency of any kind.

{¶13}  In *State v. Bryant*, 9th Dist. Lorain No. 09CA009736, 2011–Ohio–4555, ¶22 the Court observed,

The Legislative Service Commission's Note about this offense explained that this section is "aimed primarily at controlling bystanders and curiosity seekers at emergency scenes, in order to permit police, fire brigades, rescue and medical personnel, and others, to perform their duties

with the utmost efficiency at such times." The offense is described as "a specific tool for crowd control at emergencies" but the offense "need not necessarily arise from the collective conduct of a crowd but may be committed by one person." The Note sets forth an example of "one who simply gets underfoot at an emergency and is consciously aware he is doing so * * *." R.C. 2917.13, Legislative Service Commission Note (1973).

{¶14} In the case at bar, the firefighters responded to an illegal burn on the Yoder property. The evidence presented by the state is that Mast approached the firefighters on a skid loader, yelled at the firefighter and made threatening gestures with the skid loader as if he was going to use it to move a firetruck out of his way. This forced firefighter Ballantyne and Chief McCartney-Wells to each leave her post and direct her attention toward Mast. Both Ballantyne and McCartney-Wells instructed Mast to leave the scene. Mast did not immediately desist his action and leave as he was instructed by the firefighters.

{¶15} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Mast was guilty of Misconduct at an Emergency. We hold, therefore, that the state met its burden of production regarding Misconduct at an Emergency and, accordingly, there was sufficient evidence to support Mast's conviction.

*Manifest weight of the Evidence.*

{¶16} The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment

and the finding of facts.  * * *.'"  *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).  Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses.  *See, e.g., In re Brown*, 9th Dist. No.  21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶17}  Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'"  *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶18}  The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig,* 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996

WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶19} In the case at bar, the judge heard the witnesses, viewed the evidence and heard Mast's arguments and explanations about his actions. A rational basis exists in the record for crediting the testimony of the firefighters and discounting Mast's testimony. Mast injured his credibility at trial when he testified that he was attempting to do his chores; however, after his encounter with the firefighters he did not finish his chores, choosing instead to return to his trailer and hide from the police.

{¶20} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in convicting Mast of the charges.

{¶21} Based upon the foregoing and the entire record in this matter, we find Mast's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him.

The judge heard the witnesses, evaluated the evidence, and was convinced of Mast's guilt.

{¶22} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Mast was convicted.

**Conclusion**

{¶23} Mast's sole assignment of error is overruled.

{¶24} The judgment of the Holmes County Court is affirmed.

By Gwin, J.,

Delaney, P.J., and

Hoffman, J., concur