[Cite as *State v. Gaito*, 2024-Ohio-2132.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JAMES K. GAITO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 BE 0039

---

Criminal Appeal from
the Belmont County Court, Western Division,
Belmont County, Ohio
Case No. 23 CRB 217-01/02

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in Part. Reversed and Vacated in Part.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor and *Atty. Jacob A. Manning,* Assistant Prosecuting Attorney, Belmont County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Robert T. McDowall, Jr.,* Robert T. McDowall Co., LLC, for Defendant-Appellant.

Dated: June 4, 2024

**HANNI, J.**

**{¶1}** Defendant-Appellant, James K. Gaito, appeals from a Belmont County Court, Western Division, Belmont County, Ohio judgment convicting him of misconduct at an emergency and disorderly conduct. The court sentenced Appellant to 60 days in jail, suspended, community control for two years, a fine, and 30 hours of community service for the misconduct in an emergency conviction. For disorderly conduct, the court sentenced Appellant to 30 days in jail, suspended, a fine, and court costs.

**{¶2}** Appellant contends on appeal that the evidence was insufficient to show that he hampered firefighters from accessing or extinguishing the fire or that an emergency situation existed.

**{¶3}** For the following reasons, we agree that sufficient evidence does not support Appellant's conviction for misconduct in an emergency.

**{¶4}** An April 20, 2023 complaint charged Appellant with misconduct at an emergency in violation of R.C. 2917.13(A)(1) and 2917.13(C), and disorderly conduct in violation of R.C. 2917.11(A)(1) and 2917.11(E)(3). The case was consolidated with charges against another person, but the charges against that person were dismissed at trial.

**{¶5}** A bench trial was held on August 8, 2023. Daniel Blake, a 15-year volunteer firefighter and safety engineer for the Holloway Fire Department, testified for the prosecution. He testified that on April 14, 2023, he received a call about a brush fire on Main Street. (Tr. at 9). He testified that he, Captain Mark Barto, and firefighters Kelly Baker and Brandon Howells responded to the call. (Tr. at 9).

**{¶6}** Firefighter Blake testified that when they arrived on the scene, he observed a small brush fire burning. (Tr. at 11). Two vehicles obstructed their ability to get the fire truck near the scene. (Tr. at 11). They did not know who owned the vehicles. (Tr. at 24). Firefighter Blake stated that Appellant approached the fire truck and asked Captain Barto what they were doing there. (Tr. at 11). Firefighter Blake testified that when they told Appellant they were there to put out the fire, Appellant started using profanity and stated, "You'ns ain't putting out the fire." (Tr. at 11). Firefighter Blake recalled Appellant stating, "You guys will not put out this 'F'ing' fire. You're trespassing on my property. You need

to get out of here now." (Tr. at 12). Firefighter Blake recalled that Captain Barto told Appellant, "Well, we'll just let the sheriff's department decide that." (Tr. at 11). Firefighter Blake radioed dispatch to request police assistance because people at the fire were becoming aggressive. (Tr. at 14).

{¶7} Firefighter Blake further testified that they were not able to immediately address the fire because of the threats made by Appellant. (Tr. at 12). He remembered that Appellant stated that if they tried "to extinguish the fire, that there would be more problems." (Tr. at 12). Firefighter Blake stated that no one physically blocked them from doing their job. (Tr. at 13). The firefighters waited by the fire truck for 20-30 minutes until the police arrived. (Tr. at 14).

{¶8} Firefighter Blake attested that he observed green trees, rubber, and trash burning in the fire and it was about 15 feet in diameter. (Tr. at 24). He believed that it was necessary to extinguish the fire because it was located in front of dry brush and weeds and the winds were increasing that night. (Tr. at 13). He stated that the fire was not contained in a bin or enclosure, and a tarp or pool liner, furniture, trash, and other rubble were burning in the fire on the ground. (Tr. at 13). Firefighter Blake explained that Ohio had a no-burn ban in place and citizens could not burn green wood or trash. (Tr. at 17).

{¶9} Firefighter Blake testified that the sheriff's deputy arrived and gathered everyone so that the firefighters could extinguish the fire. (Tr. at 15). He stated that as they extinguished the fire, Appellant and another person unsuccessfully tried to light another fire nearby. (Tr. at 15). They extinguished the original fire as it started to spread into the weeds, but did not have to extinguish any other fires. (Tr. at 16, 23).

{¶10} On cross-examination, counsel questioned Firefighter Blake about his written report on the incident. (Tr. at 18). He stated that he did not know who started the fire and he was not informed that a cookout or party was occurring around the fire. (Tr. at 21). He observed someone bringing out hot dogs, but not until they started extinguishing the fire. (Tr. at 21).

{¶11} When asked about his reported statement that "[t]hey were hostile toward us," Firefighter Blake explained that no one threatened to hit him, push, stab, or shoot him, but he was told that there would be more issues if he performed his job. (Tr. at 22).

He responded "yes" when asked at trial if anyone threated to cause him physical harm, but admitted that he did not put this into his written statement. (Tr. at 22).

{¶12} On redirect examination, Firefighter Blake testified that he felt that he could not perform his job upon initial arrival because of the vehicles blocking their access and the threats made by Appellant. (Tr. at 27).

{¶13} When asked by the court if he recalled the specific threat made, Firefighter Blake related that as he was advancing the hose line to extinguish the fire, Appellant stated, "You extinguish the fire, you're going to have more problems." (Tr. at 29). Firefighter Blake stated that he did not know Appellant's intentions behind the threat, but he took it to mean that Appellant threatened him and his personnel. (Tr. at 29).

{¶14} Mark Barto, an over 30-year member of the volunteer fire department and captain, president, and treasurer, testified. (Tr. at 31). He drove the fire truck to the scene of the fire and cars were parked in the path of access, but they moved as soon as the fire truck arrived. (Tr. at 32). He stated that as they approached in the truck, Appellant came up and informed him that he was not going to extinguish the fire. (Tr. at 32, 34). Captain Barto indicated that he told Appellant that a deputy was on the way and the situation would be resolved then. (Tr. at 34). He recalled that Appellant, "wasn't aggressive or anything." (Tr. at 34-35).

{¶15} Captain Barto observed that the fire was a heavy brush fire, with tree trunks in it and other items that were smoldering near the fire. (Tr. at 32). He testified that open burning was allowed after 6:00 p.m. and this was a partial brush fire. (Tr. at 33). He stated that the fire was not very big and it did not advance very far. (Tr. at 33).

{¶16} Captain Barto further testified that he was standing by the fire truck waiting for the police and he saw Firefighter Blake pull the nozzle off of the truck and begin advancing it, and then return and told him that he was stopped. (Tr. at 36). Captain Barto did not see what happened. (Tr. at 36).

{¶17} On cross-examination, Captain Barto stated that the burning part of the fire was about 10 feet in diameter and it did not spread. (Tr. at 38-39). He testified that he was told that he was not going to extinguish the fire, but no one threatened him and he did not hear anyone being threatened. (Tr. at 40).

{¶18} Corporal Elizabeth Sall of the Belmont County Sheriff's Office testified that she received a dispatch call that firefighters were on the scene of a large fire and were being threatened by a group of people. (Tr. at 41). She arrived and observed a small fire and a large group of people near the railroad tracks running behind Appellant's property. (Tr. at 42). She related that Appellant and his wife greeted her as she arrived and the group seemed a little loud and rambunctious. (Tr. at 43). She testified that:

> [t]hey were obviously upset. There was a lot of tension. Mr. Gaito had some kind of large pointy stick or metal broom handle or something in his hands. He put it down as soon as I spoke to him about it, but it wasn't a big deal or anything.

(Tr. at 43).

{¶19} Corporal Sall stated that her role at the scene was not about the fire, but about keeping the peace as the firefighters felt like they were in danger because of the group of people. (Tr. at 43). She related that she did not hear any statements she would characterize as direct threats, but the group of people were upset with whoever "Pork Chop" was. (Tr. at 44). She explained that they asked her to convey several messages to him that she would not repeat in court. (Tr. at 44). She identified "Pork Chop" as one of the firefighters on the scene, but she could not recall who made the statements. (Tr. at 44). She primarily spoke to Appellant at the scene, but could not recall if he made the statements. (Tr. at 46).

{¶20} When asked if the fire was contained, Corporal Sall stated that it was an open burn and "was a big pile of smoldering stuff." (Tr. at 46). She had some concern about the fire spreading because there was brush, the whole area was wooded, and it was very windy that day. (Tr. at 46). She related that once she arrived on the scene, everyone calmed down. (Tr. at 47).

{¶21} The State rested and the defense presented no witnesses.

{¶22} The State then dismissed the charges against the other person charged with Appellant. (Tr. at 48). Counsel for Appellant moved under Crim.R. 29 for acquittal on the misconduct at an emergency charge. (Tr. at 49). He argued that the evidence established that the primary reason that the fire truck was prevented from accessing the

fire was an unknown person's vehicle blocking access. (Tr. at 49-50). As to disorderly conduct, Appellant's counsel asserted that conflicting testimony existed, but the testimony from Corporal Sall and Captain Barto established that the situation was calm. (Tr. at 50).

{¶23} The trial court ruled that the State met its burden to overcome a Crim.R. 29 acquittal. (Tr. at 50). The court found that more than just a vehicle prevented the firefighters' access to the fire. (Tr. at 50). The court held that under R.C. 2917.13, Appellant hampered lawful operations when he told firefighters that they were not going to extinguish the fire in a manner they perceived as requiring them to cease and desist. (Tr. at 52). The court further held that Appellant created a risk of physical harm to Firefighter Blake by implying that something was going to happen if Firefighter Blake extinguished the fire. (Tr. at 52-53). The court ruled that Appellant also created a risk of physical harm to the group and to property because the fire could have spread, since Corporal Sall testified it was a windy night and there was a possibility that the fire could have gotten out of control. (Tr. at 53).

{¶24} The court further explained that it discounted Captain Barto's testimony since Firefighter Blake was the individual most involved with speaking to Appellant. (Tr. at 53). The court further concluded that even though it convicted Appellant, "this was a fire that probably was going to be contained probably because the number of people around it that evening would have contained it themselves and wouldn't have let it get out of hand." (Tr. at 54).

{¶25} The court proceeded to sentencing and imposed 60 and 30-day suspended jail sentences on Counts 1 and 2, respectively, with 30 hours of community service and fines and costs. (Tr. at 55).

{¶26} Appellant filed an appeal and was granted a stay of sentence pending appeal.

{¶27} Appellant does not present assignments of error, but rather a "Law and Argument" section with subsections A and B.

**STANDARD OF REVIEW**

**{¶28}** The trial court denied Appellant's Civ.R. 29 motion for acquittal on both charges and Appellant argues that the evidence was insufficient to sustain his convictions.

**{¶29}** An appellate court reviews a denial of a motion for acquittal under Crim.R. 29 using the same standard that an appellate court uses to review a sufficiency of the evidence claim. *State v. Rhodes*, 7th Dist. Belmont No. 99 BA 62, 2002-Ohio-1572, ¶ 9; *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

**{¶30}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

**{¶31}** In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 2018-Ohio-1028, 109 N.E.3d 165, ¶ 34 (7th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds). Further, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 747 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

**STATUTES RELEVANT TO APPEAL**

**{¶32}** Appellant was charged under R.C. 2917.13(A)(1) and (C) for misconduct at an emergency. These sections provide in relevant part that:

(A) No person shall knowingly do any of the following:

(1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person, engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind;

* * *

(C) Whoever violates this section is guilty of misconduct at an emergency. Except as otherwise provided in this division, misconduct at an emergency is a misdemeanor of the fourth degree. If a violation of this section creates a risk of physical harm to persons or property, misconduct at an emergency is a misdemeanor of the first degree.

{¶33} Appellant was also charged with violating R.C. 2917.11(A)(1) and 2917.11(E)(3)(A) for disorderly conduct. These sections provide in relevant part that:

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

* * *

(E)(1) Whoever violates this section is guilty of disorderly conduct.

(2) Except as otherwise provided in divisions (E)(3) and (4) of this section, disorderly conduct is a minor misdemeanor.

(3) Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:

(a) The offender persists in disorderly conduct after reasonable warning or request to desist.

{¶34} Appellant presents the following issues in his Law and Argument section:

**THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION THAT HE "HAMPERED" THE EMERGENCY RESPONDERS.**

**THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION THAT AN EMERGENCY SITUATION EXISTED.**

**{¶35}** Appellant asserts that the prosecution presented no evidence that he was ordered to leave the scene, failed to comply with any order, or physically prevented firefighters from performing their duties. He further submits that no evidence established that he made a threat to hit, push, shoot, or commit any act to obstruct firefighters from extinguishing the fire.

**{¶36}** Appellant cites Firefighter Blake's testimony that Appellant only used profanity and stated that he did not want the fire extinguished. Appellant also cites Blake's testimony that he did not know Appellant's intention when Appellant stated there would be "issues" between Appellant and the firefighters if they extinguished the fire. (Tr. at 22, 29).

**{¶37}** Appellant emphasizes that the other two responders who testified did not perceive his words as threatening but only as a dissatisfaction with the firefighter's actions. He cites Captain Barto's testimony that Appellant was not aggressive when telling firefighters that they were not going to extinguish the fire and Captain Barto observed nothing at the scene that caused concern. (Tr. at 34-36). Appellant also notes Corporal Sall's testimony that while Appellant and the people around the fire were upset, she heard nothing that constituted a threat and the fire was extinguished without incident. (Tr. at 44, 47).

**{¶38}** Appellant also mentions that his speech was protected under the First Amendment of the United States Constitution because his words were not threats and did not seek to disrupt the firefighters from performing their duties or warn others not to cooperate or respond to firefighters.

**{¶39}** Noting that R.C. 2917.13 does not define "hamper" or "emergency," Appellant cites cases addressing the statute and submits that they share the common finding that the defendant "acted-out in a way that interfered with an official's investigation

of an accident or emergency." He cites *State v. Bryant*, 9th Dist. Lorain No. 09CA009736, 2011-Ohio-4555, in support.

**{¶40}** In *Bryant,* a high school girl was convicted of misconduct at an emergency and she asserted on appeal that insufficient evidence existed to sustain her conviction. *Id.* at ¶ 4. Bryant initially provided false information to police after a fire was started in the girl's restroom at the school.

**{¶41}** The appellate court reversed her conviction, comparing the facts with the few cases addressing this statute. *Id.* at ¶ 1, 12-21. The court held that while Bryant's conduct caused a delay in the investigation, it was "not of the same quality as the conduct that has resulted in convictions under this statute and did not occur during an ongoing emergency." *Id.* at ¶ 12.

**{¶42}** Appellant also refers to the Legislative Service Commission Note on the purpose of the statute, which is to "control bystanders and curiosity seekers at emergency scenes in order to permit police, fire brigades * * * to perform their duties with the utmost efficiency at such times." *Id.* at ¶ 22, quoting R.C. 2917.13, Legislative Service Commission Note (1973). Appellant notes that the Commission described the statute as a tool for controlling crowds at emergencies, but indicated it could also be used to control one person, such as "one who simply gets underfoot at an emergency and is consciously aware he is doing so." *Id.*

**{¶43}** Appellant cites *State v. Blocker*, 10th Dist. Franklin No. 06AP-313, 2007-Ohio-144, where the Tenth District held that sufficient evidence supported Blocker's conviction under R.C. 2917.13(A)(1). The court applied the common dictionary meaning of "emergency" to R.C. 2917.13, which is "an unexpected situation or sudden occurrence of a serious and urgent nature that demands immediate attention." *Id.* at ¶ 51 (citations omitted).

**{¶44}** Paramedics in *Blocker* testified that when they arrived at Blocker's apartment in response to her call for assistance for her sister, they found the sister lying on the floor face down in the carpet. She was bleeding and complaining of abdominal pain equal to a 10 on a 10-point scale. The paramedics further testified that upon questioning her sister, Blocker barraged them with questions and comments such that they could not hear the sister's responses to their questions. They also testified that

Blocker banned one of them from coming back into her apartment after he stepped out to call police. The court held that the situation qualified as an emergency and Blocker hampered the efforts of the paramedics in an emergency. *Id.*

**{¶45}** Appellant further cites *State v. Zaleski*, 10th Dist. Franklin No. 10AP-101, 2010-Ohio-5557, for the meaning of "emergency" under R.C. 2917.13(A)(1). Zaleski argued that no emergency existed when he shut off the electricity to an apartment complex. Firefighters were at the scene for a fire alarm and they found that the alarm sounded due to burned food. The firefighters removed the smoke from the building, but continued to investigate because the alarm kept ringing. One of the firefighters testified that Zaleski turned off the electricity, despite being asked to leave when they first arrived, and again when they found him trying to disconnect the electric meters.

**{¶46}** The *Zaleski* court cited *Blocker* and the dictionary meaning of "emergency*." Id.* at ¶ 12. The court upheld Zaleski's conviction for misconduct at an emergency, reasoning that the malfunctioning fire alarm continued to constitute an emergency because it presented a serious and urgent problem which required the firefighters' attention. *Id.*

**{¶47}** Appellant also cites *State v. Wagar*, 91 Ohio App.3d 233, 632 N.E.2d 546 (9th Dist. 1993), where the Ninth District held that sufficient evidence was presented to convict Wagar under R.C. 2917.13(A)(1). The court rejected his assertion that no emergency existed when he attempted to move his "lightweight fabric" airplane from an airport runway after it crashed. *Id.* at 547-548. The court held that sufficient evidence of an emergency existed as the Ohio State Highway Patrol officer testified that Wagar was told several times not to move his plane while they investigated the crash and he continued to attempt to move it. *Id.*

**{¶48}** Appellant cites additional cases addressing when a defendant has "hampered" officials from performing their duties. He cites *City of Parma v. Odolecki*, 8th Dist. Cuyahoga No. 104160, 2017-Ohio-2979. There, Odolecki, a journalist and activist, was convicted for misconduct in an emergency under a Parma ordinance which tracked R.C. 2917.13. He was riding a bicycle and saw a young autistic man sitting on a guard rail near the end of a bridge with police officers surrounding him and police car lights

activated. *Id.* at ¶ 5, 10. The boy's mother had called 911 to report that her son was attempting to commit suicide by jumping off of a bridge.

**{¶49}** Odolecki began recording the situation on his cell phone. He was asked by an officer to "do that another time" because the boy was having a "bad day." Odolecki refused. Odolecki was asked to move away from the scene and he responded that he was in a public place. He moved across the street and loudly spoke about the police violating his rights and stated, "say hello to Youtube motherfucker." *Id.* at ¶ 8. An officer yelled that Odolecki was offending small children and warned him about a disorderly conduct charge. Testimony established that the young man became more agitated and told officers that he might as well jump since Odolecki was recording him.

**{¶50}** Odolecki was charged with violating the ordinance similar to R.C. 2917.13(A)(1). He asserted that there was insufficient evidence of an emergency. The court upheld his conviction, holding that the purpose of the ordinance was to give "extraordinary" control to law enforcement to protect the public. *Id.* at ¶ 52, citing *Kinzer v. Schuckmann*, 850 F.Supp.2d 785, 794 (S.D. Ohio 2012). The court found that Odolecki's decision to begin recording as he approached two police cars and three police motorcycles, all with lights flashing, showed that he understood that police were involved in a situation which required their intervention. *Id.* at ¶ 51.

**{¶51}** The court held that police were owed "a measure of deference" in assessing dangers to bystanders and determining if an impediment existed to their efforts and their safety in trying to manage the situation. *Id.* at ¶ 52. The court ruled that "[i]t was only after Odolecki imposed himself directly in the area that a request was made for him to cease. The record demonstrates Odolecki's direct presence was causing distress to the young man and family as well as a distraction to the officers attempting to resolve the situation." *Id.* at ¶ 51.

**{¶52}** Appellant also cites *State v. Mapes*, 3d Dist. 2021-Ohio-257, 167 N.E.3d 569 (3d Dist.), where the court found insufficient evidence to sustain Mapes' conviction under R.C. 2917.13(A)(1). The court relied on *Bryant* and particularly the holding in that case that "—to be guilty of misconduct at an emergency—'the defendant [must] engage[ ] in some meddlesome or obstreperous conduct.'" *Id.* at ¶ 18, quoting *Bryant,* 2011-Ohio-4555, at ¶ 21. The *Mapes* Court held that Mapes was not the type of person that the

statute intended to govern as he was attempting to help the victim of a car accident when police arrived on the scene and was not a "bystander or curious seeker." *Id.* at ¶ 19. The court further held that Mapes found a safer way to comply with the officer's order to cross the multiple-lane busy highway in the rain with the victim, which avoided a significant danger. *Id.* at ¶ 20.

**{¶53}** Appellant also cites cases concerning R.C. 2921.31(A), obstructing official business, which also prohibits a person from "hampering" or impeding a public official in performing their duties. *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215 (1st Dist.) (focus in applying statute is on defendant's conduct and its effect on official's ability to perform duties).

**{¶54}** In discussing these cases, Appellant veers into the First Amendment protections of speech. He cites *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (statute constitutional as limited scope does not violate First Amendment when it punishes specific conduct of using words in a public place likely to cause of a breach of the peace); *In re Payne*, 1st Dist. Hamilton No. C-040705, 2005 WL 2248870 (mere argument insufficient to violate statute, but truthful speech actionable if evidence clearly demonstrates intent to obstruct official duties and interference is continuum where at a certain point line is crossed); and *Kinkus v. Village of Yorkville*, 453 F.Supp.2d 1009 (S.D. Ohio 2006) (profane language used during conversation with official protected by First Amendment and disorderly conduct charge lacked probable cause for filing criminal complaint as not fighting words).

## LAW AND APPLICATION

**{¶55}** We find that insufficient evidence supports Appellant's conviction for misconduct at an emergency under R.C. 2917.13(A)(1) and (C).

**{¶56}** Applying the cases cited by Appellant, sufficient evidence was presented to establish the existence of an emergency. The source of the call to dispatch the firefighters was not disclosed. However, Firefighter Blake expressed concerns about the lack of containment of the fire, illegal items being burned, the fire's location near dry brush on a night with increasing wind, and the fire spreading to nearby brush and weeds. (Tr. at 11-12). Captain Barto also confirmed the burning of illegal items and that it was a heavy

brush fire. (Tr. at 32-33). In addition, Corporal Sall testified that she was concerned about the fire spreading because it was not contained, it was located near a wooded area, and it was a very windy day. (Tr. at 46). This constitutes sufficient evidence to establish that an emergency existed.

**{¶57}** However, insufficient evidence supports a finding that Appellant hampered the firefighters from extinguishing the fire. Appellant's conduct here is not of "the same quality as the conduct that has resulted in the convictions under this statute." *Bryant*, 2011-Ohio-4555, ¶ 12. While hampering is not defined in the statute, the court in *Mapes*, 2021-Ohio-257, applied the common everyday meaning of "hamper," which is "to interfere with." *Merriam-Webster's Collegiate Dictionary* 564 (11th Ed.2003). The term "interfere" commonly means "to interpose in a way that hinders or impedes." *Id.* at 652. *See also State v. Stephens*, 57 Ohio App.2d 229, 230, 387 N.E.2d 252 (1st Dist.1978) (applying the plain meaning of the words "hamper" and "impede" to define the obstructing-official-business statute); *State v. Buttram*, 1st Dist. Hamilton No. C-190034, 2020-Ohio-2709, ¶ 19 (defining impeding as a synonym of hampering under the obstructing-official-business statute).

**{¶58}** The few Ohio cases affirming a defendant's conviction under R.C. 2917.13(A)(1) and (C) involved more affirmative acts than strong words or expelling profanity at emergency workers. In *Blocker,* 2007-Ohio-144, paramedics described the defendant as "belligerent," "nearly screaming" at them, and barraging them with questions while they attempted to medically aid her sister such that they could not hear responses to medical questions and provide assistance. *Id.* at ¶ 8-9. The paramedics testified that Blocker also revoked permission for one of them to return to her apartment and called someone to the apartment who made them feel more threatened. *Id.* at ¶ 12.

**{¶59}** In *Zaleski*, 2010-Ohio-5557, the defendant stipulated that his conduct of shutting off the power interfered with the firefighters' duties. *Id.* ¶ 11. He asserted only that the situation was not an emergency under R.C. 2917.13(A) because the source of the alarm was located.

**{¶60}** In *State v. Mast,* 5th Dist. Holmes No. 17CA11, 2017-Ohio-8388, ¶ 4, the defendant not only yelled at firefighters trying to extinguish a fire, but he also drove a skid loader past one of their trucks, failed to comply with the firefighter's commands to stop

the skid loader, and yelled at the firefighter to "move that piece of shit or [he would] move it for you."

**{¶61}** Even the case cited by Appellee, *State v. Green*, 1st Dist. Hamilton No. C-190280, 2020-Ohio-4370, ¶ 3-4, involved more than a defendant using strong language or profanity at authorities. Green refused to move his car after driving up a street blocked by a police car due to seriously inclement winter weather. The defendant stopped by the officer's car and was told to move his car. He refused, stating that he did not want his car to get stuck. After refusing to move his car and arguing with the officer, another officer arrived and the defendant refused his order to move his car. When the officer threatened to arrest defendant for misconduct at an emergency, the defendant retreated to his car and locked the doors. When officers knocked on his windows and ordered him out to arrest him, the defendant shifted the car into reverse and hit the gas, spinning the tires. Both officers testified that they would have been struck had the car had traction.

**{¶62}** Appellant made comments to the firefighters in the instant case. His words did not rise to the level of "fighting words" and did not match the conduct by the defendants in the other cases where courts upheld convictions for misconduct in an emergency under R.C. 2917.13(A)(1) and (C). There was no evidence presented showing that Appellant was given a directive and defied it. There was no evidence demonstrating that Appellant was given instructions to move or refrain from any actions and refused to follow. No evidence demonstrated that he committed any action violative of the statute.

**{¶63}** As to Appellant's disorderly conduct conviction, his counsel represented at oral argument that he was not challenging this conviction.

**{¶64}** For the foregoing reasons, Appellant's conviction for misconduct at an emergency is reversed and vacated. Appellant's disorderly conduct conviction is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 23 BE 0039

_____

For the reasons stated in the Opinion rendered herein it is the final judgment and order of this Court that the judgment of the Belmont County Court, Western Division, Belmont County, Ohio, is reversed only as to Appellant's conviction for misconduct at a scene of an emergency and this conviction is vacated. Appellant's conviction for disorderly conduct is affirmed. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**